# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **RAYMOND WATISON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 1:19-cv-00088** |
| | ) | |
| **v.** | ) | **JUDGE CAMPBELL** |
| | ) | **MAGISTRATE JUDGE HOLMES** |
| **TONY PARKER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM</u>

Raymond Watison, a prisoner at the South Central Correctional Facility in Clifton, Tennessee, filed a *pro se* complaint in the Western District of Tennessee (Doc. No. 1) and an application to proceed without prepaying fees and costs (Doc. No. 2). That court granted the application and transferred the case to this Court. (Doc. No. 4, 7). Plaintiff subsequently filed a Second Amended Complaint against Tennessee Department of Correction ("TDOC") Commissioner Tony Parker, TDOC Assistant Commissioner Lee Dotson, and Tennessee Attorney General Herbert H. Slattery, III, under 42 U.S.C. § 1983, the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and state law.[1] (Doc. No. 15). The case is before the Court for an initial review of the Complaint pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

---

[1] The Court granted Plaintiff's motion to amend the complaint, and then ordered the Plaintiff to file a second amended complaint to resolve joinder concerns. (Doc. No. 11). The Second Amended Complaint, filed on August 3, 2020, became operative in this case pursuant to Order of the Court. (Doc. No. 14). For ease of reference, the Court hereinafter refers to it as the "Complaint."

# I. INITIAL REVIEW OF THE COMPLAINT

Under the PLRA, the court must review and dismiss any prisoner complaint filed *in forma pauperis* if it is frivolous or malicious, fails to state a claim, or seeks monetary relief from an immune defendant. 28 U.S.C. §§ 1915(e)(2) and 1915A.

## A. Standard of Review

To determine whether a complaint "fails to state a claim on which relief may be granted" under the PLRA's screening requirements, the court applies the same standard as under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true unless they are entirely without credibility. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)). An assumption of truth does not extend to legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The court determines whether those factual allegations "plausibly suggest an entitlement to relief," *Williams*, 631 F.3d at 383 (quoting *Iqbal*, 556 U.S. at 681), that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383; *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)). Even under this lenient standard, however, *pro se* plaintiffs must meet basic pleading requirements and are not exempted from the requirements of the Federal Rules of Civil Procedure. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Young*

2

*Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) (explaining the role of the courts is not "to ferret out the strongest cause of action on behalf of *pro se* litigants" or to "advis[e] litigants as to what legal theories they should pursue").

## B. Factual Background

The liberally-construed Complaint alleges the following facts that the Court must accept as true for purposes of initial review. On May 10, 2019, Plaintiff received a "Memorandum" from TDOC regarding trust fund administration. (*Id*. at 6.) The Memorandum stated that, pursuant to Tenn. Code Ann. § 40-25-143, TDOC has the authority to collect from Plaintiff's trust fund account money necessary to satisfy unpaid court costs imposed upon Plaintiff. (*Id*.) The Memorandum further indicated that the sum of $379.50 would be deducted from Plaintiff's trust fund. (*Id*.) The Memorandum noted these costs had been assessed by the Shelby County Criminal Court in case number 16-4807, the amount would not appear on the judgment, and that the fees could not be waived, set aside, or suspended. (*Id*. at 7). Plaintiff was convicted in Shelby County Criminal Court in January 2018, but he did not receive a "Judicial Bill of Costs," writ of execution, or any "bona fide document" regarding the payment of fees. (*Id*.)

Beginning on July 16, 2019, 50 percent of all deposits made to Plaintiff's trust fund account has been deducted to satisfy this outstanding debt. (*Id*.) Plaintiff submitted a grievance under Tenn. Code Ann. § 40-25-143 to Commissioner Parker, Assistant Commissioner Dotson, and Attorney General Slattery. (*Id*.) Dotson responded to the grievance by stating that "appealing decisions of any agency other than TDOC" in not appropriate subject of a TDOC grievance. (*Id*. at 8). The Complaint alleges that it is the TDOC "Commissioners" who "approve of such transactions"; that Defendants "knowingly . . . diverted" his funds to "benefit other agencies not entitled thereto"; and that they "refuse to stop their unlawful debt collecting activities." (*Id*.)

3

Plaintiff sues Parker, Dotson, and Slattery in their individual and official capacities. (*Id.* at 2-3). Plaintiff brings a civil claim under the Racketeer Influenced and Corrupt Organizations ("RICO") Act; 18 U.S.C. §§ 1961, 1962, 1964; claims under Section 1983 for violation of the First and Eighth Amendments; and a state law claim under Tenn. Code Ann. § 40-25-144. (*Id.* at 3). He seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* at 5).

**C. Analysis**

1. Civil RICO Claims

Plaintiff first brings claims against Defendants under the RICO Act. In a "civil RICO" claim, a plaintiff may seek redress for racketeering activity or collection of unlawful debt. *See* 18 U.S.C. § 1962.[2] The collection of unlawful debt is both a predicate act for racketeering activity, *see Otworth v. Budnik*, 594 F. App'x 859, 862 (6th Cir. 2014), and a native offense under the RICO Act. 18 U.S.C. § 1962(a)-(c). However, the RICO Act has a very restrictive definition of "unlawful debt." Specifically, "unlawful debt" under the RICO Act is only a debt "incurred or contracted in gambling activity' or 'which is unenforceable under State or Federal law in whole or in part . . . because of the laws relating to usury.'" 18 U.S.C. § 1961(6). Accordingly, "collection efforts that do not go to an unlawful debt do not fall within the scope of the RICO Act." 77 C.J.S. RICO § 15 (June 2020); *see also Otworth*, 594 F. App'x at 862 (concluding claim that local officials unlawfully assessed and collected property taxes did not allege collection of "unlawful debt" under the RICO Act).

Here, the Complaint alleges that Defendants engaged in "unlawful debt collecting activities" by deducting court costs assessed by the Shelby County Criminal Court from Plaintiff's

---

[2] The Complaint also references 18 U.S.C. § 1961 and § 1964. (Doc. No. 15 at 3). These sections do not, however, provide a substantive basis for a separate claim. Section 1961 is the "definitions" section of the RICO Act, and Section 1964 discusses available remedies for violations of Section 1962.

4

prison trust account. (Doc. No. 15 at 7-8). Those court costs, even if improperly assessed, fall within neither category of "unlawful debt" included in the RICO Act. *See Otworth*, 594 F. App'x at 862; 18 U.S.C. § 1961(6). Accordingly, Plaintiff's allegations that Defendants improperly collected this debt fails to state a civil RICO claim. This claim must, therefore, be dismissed.

2. Section 1983 Claims

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cty.*, 763 F.3d 592, 595 (6th Cir. 2014).

A. Individual Capacity Claims

Plaintiff first sues Defendants under Section 1983 in their individual capacities. "Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012); *see also Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."); *Hall v. Trump*, No. 3:19-cv-00628, 2020 WL 1061885, at *5 (M.D. Tenn. Mar. 5, 2020). Furthermore, because there is no *respondeat superior* liability under Section 1983, supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hall*, 2020 WL 1061885, at *5 (citing *Hays v. Jefferson Cty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982)). Supervisory officials who are aware of the unconstitutional conduct of their subordinates but fail to act generally cannot be held liable in their individual capacity. *Grinter v.*

5

*Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Here, the Complaint alleges that Tennessee submitted a claim for reimbursement of Plaintiff's court costs to TDOC via a January 2019 letter from Slattery to Parker and Dotson, and, several months later, TDOC began collecting from Plaintiff's trust fund to repay this debt. (Doc. No. 15 at 6-7). Even construed most liberally, these allegations suggest nothing more than an exchange of documentation between state department supervisors Slattery and Parker. Plaintiff does not allege that Slattery or Parker actively engaged in, or were even aware of, particular acts that allegedly violated Plaintiff's constitutional rights. For example, the Complaint makes no allegation that Slattery or Parker have ever had any personal knowledge about Plaintiff or his particular court costs, or were personally involved in any decisions or efforts concerning collection of Plaintiff's debt. Plaintiff's allegations are, therefore, insufficient to state an individual-capacity claim against Slattery or Parker.

The Complaint implies that Dotson had personal knowledge of Plaintiff's circumstances because he denied Plaintiff's grievance. (*Id*. at 7-8). However, "[a] failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability." *Perkins v. Washburn*, No. 3:19-cv-00959, 2020 WL 3972749, at *9 (M.D. Tenn. July 14, 2020) (citing *Woodard v. Farris*, No. 2:20-cv-00007, 2020 WL 1469886, at *5 (M.D. Tenn. Mar. 25, 2020)). Finally, the Complaint generally alleges that Defendants "have control over the disposition of services to others" and that they "diverted those services to benefit other agencies." (*Id*. at 8). However, these allegations are far too vague to plead personal involvement necessary to "plausibly suggest an entitlement to relief." *Williams*, 631 F.3d

6

at 383 (quoting *Iqbal*, 556 U.S. at 681). Accordingly, Plaintiff's individual-capacity Section 1983 claims against Slattery, Parker, and Dotson must be dismissed.

### B. Official-Capacity Claims for Money Damages

Plaintiff also sues Defendants under Section 1983 in their official capacities. The Court first considers whether Defendants are immune from Plaintiff's official-capacity claims for money damages. Each state possesses certain immunities from suit that "flow from the nature of sovereignty itself as well as the Tenth and Eleventh Amendments." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). Consequently, a state may not be sued for money damages in federal court by a private individual, subject to a few exceptions. *Id.* at 358-59; *see also Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'"); *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

The Supreme Court has made clear that state agencies and those agencies' officials enjoy this same immunity. *Ernst*, 427 F.3d at 358 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (explaining an official-capacity claim "is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the state itself"). Stated differently, generally speaking, states, arms of the state, and those arms' officials are not "persons" for purposes of Section 1983 liability. *Id.*

Sovereign immunity applies here. The Attorney General is a state official subject to sovereign immunity. *See, e.g.*, *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 513-14 (6th Cir. 2008). Parker and Dotson are senior officials of TDOC, which is "an arm of the state of Tennessee for

7

purposes of Eleventh Amendment immunity." *Primm v. Tenn. Dep't of Corr.*, No. 3:15-cv-00230, 2017 WL 1210066, at *5 (M.D. Tenn. Mar. 31, 2017) (citing *Owens v. O'Toole*, No. 3:14-cv-02040, 2014 WL 5846733, at *3 (M.D. Tenn. Nov. 12, 2014); *see also Gennoe v. Washburn*, No. 3:19-cv-00478, 2019 WL 5693929, at *5 (M.D. Tenn. Nov. 4, 2019) (holding official-capacity claim against TDOC employee is equivalent to claim against the State of Tennessee). Because an award on Plaintiff's official-capacity claims against Defendants would ultimately be paid by the State of Tennessee, Tennessee's sovereign immunity protects these Defendants. Accordingly, Plaintiff's official-capacity claims for money damages must be dismissed.

### C. Official-Capacity Claims for Injunctive Relief

Claims for prospective injunctive relief, however, are properly brought against state officials in their official capacities.[3] *Ex Parte Young*, 209 U.S. 123, 159-60 (1908); *Idaho v. Coeur D'Alene Tribe*, 521 U.S. 261, 269 (1997); *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014); *Hall,* 2020 WL 1061885, at *2 (citing *Will*, 491 U.S. at 71 n.10). Plaintiff here seeks a prospective "injunction to stop unlawful debt collecting." (Doc. No. 15 at 5). Accordingly, the Court considers whether Plaintiff has stated a colorable claim.

---

[3]    There are three exceptions to the general rule of sovereign immunity: (a) where a state has waived its immunity and has consented to be sued in federal court, *see Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)); (b) where Congress validly abrogates sovereign immunity through its enforcement powers pursuant to the Fourteenth Amendment to the United States Constitution, *see Seminole Tribe of Florida*, 517 U.S. at 57-73; *Quern v. Jordan*, 440 U.S. 332, 340) (1979) (collecting cases)); and (c) where a plaintiff sues state officials in their official capacities seeking prospective injunctive relief for a continuing violation of federal law, *see Ex Parte Young*, 209 U.S. at 159-60; *Coeur D'Alene Tribe*, 521 U.S. at 269; *Mich. Corr. Org.*, 774 F.3d at 904. The first two exceptions do not apply: Congress has not abrogated Eleventh Amendment immunity under Section 1983, and Tennessee has not waived it or consented to suit under Section 1983. *Primm*, 2017 WL 1210066, at *5 (citing *Owens*, 2014 WL 5846733, at *3); *Burrell v. Tenn. Dep't of Human Servs.*, No. 94-5754, 1995 WL 314891, *2 (6th Cir. May 23, 1993) (per curiam); *Heithcock v. Tenn. Dep't of Children's Servs.*, No. 3:14-cv-2377, 2015 WL 4879107, at *6 (M.D. Tenn. Aug. 14, 2015). The third exception – a claim for prospective injunctive relief – applies here.

Under Section 1983, the State of Tennessee cannot be held liable for injunctive relief under a theory of *respondeat superior* or vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). Rather, the plaintiff must allege: (1) that he suffered a constitutional violation; and (2) that a policy or custom of TDOC or the State of Tennessee directly caused the violation. *Hadrick v. City of Detroit, Mich.*, 876 F.3d 238, 243 (6th Cir. 2017) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). In other words, "[a] plaintiff seeking to impose liability under [Section] 1983 must demonstrate that, through its deliberate conduct, the [state] was the moving force behind the injury alleged," such that there is a "direct causal link between the [state] action and the deprivation of federal rights." *Phillips v. Shelton*, No. 2:18-cv-00077, 2019 WL 429679, at *4 (M.D. Tenn. Feb. 4, 2019) (quoting *Burns v. Robertson Cty.*, 192 F. Supp. 3d 909, 920 (M.D. Tenn. 2016) and *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom or tolerance or acquiescence of federal rights violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Here, Plaintiff does not attribute his alleged harms to any particular TDOC or Tennessee policy. However, even if the Court were to assume, *arguendo*, that the Complaint implied a policy of collusion between the Attorney General and TDOC to collect unlawful debts from prisoner trust accounts (whether explicit or ratified by Defendants as officials with final decision making authority), the Complaint nonetheless fails to state an official-capacity claim for injunctive relief because Plaintiff does not adequately allege a constitutional injury.

9

### i. Eighth Amendment

First, the Complaint fails to raise any violation of the Eighth Amendment prohibition on cruel and unusual punishment. The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 F. App'x 448, 454-55 (6th Cir. 2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Therefore, to establish an Eighth Amendment violation, a plaintiff must make an objective showing of the deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347); *see also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). A plaintiff must show that a defendant, subjectively, acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 F. App'x at 455 (citing *Farmer*, 511 U.S. at 834). Without more, allegations that TDOC is improperly deducting funds to satisfy $379.50 of court costs satisfy neither the objective nor subjective elements of an Eighth Amendment claim.

### ii. First Amendment

The Complaint also fails to adequately raise a violation of the First Amendment. The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. CONST. amend. I. Prisoners retain the right to free

exercise of their religion, and they must, therefore, be provided "reasonable opportunities" to practice their religion. *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). However, a prisoner's right to exercise his religious beliefs may be subjected to reasonable restrictions and limitations reasonably related to legitimate penological interests. *Vick v. Core Civic*, 329 F. Supp. 3d 426, 452-53 (citing *Bell v. Wolfish*, 441 U.S. 520, 549-51 (1979); *Pollack v. Marshall*, 845 F.2d 656, 658-60 (6th Cir.1988)); *see also Walker*, 771 F.2d at 929 (explaining that "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs"). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs, nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular prisoner; the internal administration of a correctional facility is a function left to the discretion of prison administrators. *Vick*, 329 F. Supp. 3d at 452-53 (citations omitted).

The Complaint alleges that the garnishment of trust account funds by TDOC is preventing Plaintiff from using those funds to purchase certain religious books and clothing. (Doc. No. 15-6). This allegation fails to state a free exercise claim for at least two reasons. First, the Complaint alleges only that Plaintiff cannot purchase as much religious materials as he desires, not that he is being "denied the opportunity to practice his religion or that he incurred punishment for doing so." *Moler v. Stovall*, No. CV 6:19-203-GFVT, 2019 WL 6467820, at *2 (E.D. Ky. Dec. 2, 2019). Indeed, the Complaint does not allege that Plaintiff is denied the practice his faith, or even that TDOC was made aware of Plaintiff's religious concerns. Thus, Plaintiff fails to allege that TDOC is purposefully garnishing his deposits despite concerns about exercise of religion. *See Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 460 (6th Cir. 2019) ("When a prison policy singles out and *substantially burdens* a prisoner's sincere beliefs, the First Amendment requires us to ask whether

11

the policy serves a valid penological interest.") (emphasis in original). At best, "his allegation sets forth a claim of negligence, which is not actionable under Section 1983." *Searcy v. Gardner*, No. 3:07-0361, 2008 WL 400424, at *5 (M.D. Tenn. Feb. 11, 2008). Second, the Complaint alleges that TDOC is collecting only 50 percent of deposits to Plaintiff's trust fund up to $379.50. Thus, by Plaintiff's own allegations, half of his trust fund deposits – and all deposits beyond $379.50 – are available for religious purchases. "*[D]e minimis* infringements fail to rise to the level required for a constitutional [free exercise] claim." *Id.* (citations omitted).[4]

Accordingly, Plaintiff's official-capacity claims for injunctive relief must be dismissed.

### 3. State Law Claim

The Court may decline to exercise supplemental jurisdiction over a state law claim if it dismisses "all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In determining whether to retain jurisdiction over state-law claims, a district court should consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). The Sixth Circuit has explained that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Id.* at 952 (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)).

Although not entirely clear, it appears that Plaintiff seeks relief under Tenn. Code Ann. § 40-25-143 or § 40-25-144. If such a claim is viable, it is of the type that Tennessee courts routinely

---

[4] The Complaint makes no reference to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1, *et seq.*, but even supposing Plaintiff intended to bring a RLUIPA claim, the claim would fail. RLUIPA requires a plaintiff to allege that a prison policy "substantially burdens a religious practice." *Koger v. Mohr*, 964 F.3d 532 (6th Cir. 2020) (citing *Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014)). He has failed to do so for substantially these same reasons.

and skillfully consider. *See, e.g.*, *Waters v. Ray*, No. M200802086COAR3CV, 2009 WL 5173718 (Tenn. Ct. App. Dec. 29, 2009) (considering whether prisoner had a vested interest in indigency or was subject to payment of court costs pursuant to statute). Fairness and comity therefore dictate that the Tennessee courts should be given the opportunity to decide these claims. After weighing the relevant factors, the Court does not find any reason to depart from the general rule, and therefore declines to retain supplemental jurisdiction over Plaintiff's state law claims.

### IV. CONCLUSION

For the reasons explained above, the Complaint fails to state a claim upon which relief can be granted under Section 1983 and RICO against any named Defendant. Consequently, these claims will be dismissed with prejudice. The Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim.

An appropriate Order will enter.

WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

13